**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

JOSEPH SOHM and VISIONS OF AMERICA,    :    Case No. 16-cv-7098 (JPO)
LLC    :
   :    ECF Case
                Plaintiffs,    :
   :    **PLAINTIFFS' MOTION FOR**
        -against-    :    **PARTIAL SUMMARY JUDGMENT**
   :    **AND SUPPORTING MEMORANDUM**
SCHOLASTIC, INC.,    :
   :
                Defendant.    :
   :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Christopher Seidman (SBN 98884)
Harmon Seidman Bruss & Kerr, LLC
101 South Third Street, Suite 265
Grand Junction, Colorado 81501
Tel: (970) 245-9075
E-mail: chris@harmonseidman.com

Maurice Harmon (admitted *pro hac vice*)
Harmon Seidman Bruss & Kerr, LLC
11 Chestnut Street
New Hope, PA 18938
Tel: 215-693-1953
maurice@harmonseidman.com

*Attorneys for Plaintiffs Joseph Sohm and*
*Visions of America, LLC*

Plaintiffs Joseph Sohm and Visions of America, LLC (collectively, "Sohm") hereby submit this Motion for Partial Summary Judgment and Memorandum of Law pursuant to Fed. R. Civ. P. 56(a). Sohm seeks a judgment of liability against Defendant Scholastic, Inc. ("Scholastic") for 16 claims of copyright infringement alleged in the First Amended Complaint ("Complaint") (Doc. No. 41), and identified in the Claims Summary submitted as Exhibit 1 to the Declaration of Alex Kerr ("Claims Summary"). Pursuant to Local Rule 56.1, Sohm also submits a Statement of Undisputed Material Facts and supporting documents.

## I.      INTRODUCTION

This copyright infringement action arises out of Scholastic's unauthorized use of Sohm's photographs in its publications. Through stock photography licensing agencies, Corbis Corporation ("Corbis"), Photo Researchers, Inc. (Photo Researchers"), and The Image Works ("TIW"), (collectively, "Licensors"), Sohm sold Scholastic limited licenses to use his photographs in various publications, based on Scholastic's representations as to how and in what quantities it would use the photographs. After gaining access to photographs from Sohm – and from many other copyright owners and licensors – Scholastic committed copyright infringement massive scale.

Here is how Scholastic's scheme worked: To gain access to high-resolution, publication-quality images, Scholastic contacted individual photographers and stock photo agencies, requesting limited licenses to copy and distribute their images in Scholastic products. Scholastic did not request unlimited-use licenses because, in the stock photography business, such licenses commanded much higher fees. The image suppliers priced their licenses according to the rights being granted, and Scholastic paid the license fees. Scholastic then exceeded the license terms by printing additional unlicensed copies of the photographs. The table below illustrates some of Scholastic's infringements:

| Publication | Licensed Print Amount | Actual Print Amount |
|---|---|---|
| Slightly Odd USA | 50,000 | 195,713 |
| Veterans Day | 40,000 | 129,051 |
| Emergent Readers: Wheels | 40,000 | 195,500 |

Sohm had no way of knowing the extent of Scholastic's actual use of his photographs. He believed that Scholastic would use his photographs within the limits of the licenses Scholastic purchased. It did not. Instead, Scholastic systematically infringed Sohm's and others' copyrighted works and has now been sued for copyright infringement arising out of similar facts in at least 11 separate cases.[1]

Here, there is no dispute that Scholastic made copies of the Photographs in quantities that exceeded the licensed print run limits. Scholastic's copying in excess of the licensed print run limits constitutes copyright infringement. Accordingly, Sohm seeks summary judgment as to Scholastic's liability for copyright infringement for the claims identified in the Claims Summary.

## II.      UNDISPUTED MATERIAL FACTS

### A.      Sohm owns valid copyrights in the Photographs at issue.

Sohm is the creator and legal copyright owner of the photographs identified in the Claims Summary ("Photographs").[2] Each of the Photographs is the subject of a valid Certificate of Copyright Registration issued by the Register of Copyrights.[3]

### B.      Sohm authorized the Licensors to issue limited licenses to third parties for use of his photographs.

On or around April 19, 1994, Sohm[4] entered into a license agreement with Continuum Production Corporation, which later became Corbis, authorizing it to issue limited license for use of

---

[1] Separate Statement of Undisputed Facts ("Statement of Facts"), ¶ 17; Declaration of Alex Rice Kerr ("Kerr Decl."), ¶ 17.
[2] Statement of Facts, ¶¶ 1-4; Declaration of Joseph Sohm ("Sohm Decl."), ¶¶ 2-4.
[3] Statement of Facts, ¶ 5; Sohm Decl., ¶¶ 5-20 and Exhibits 1-3 thereto.
[4] Sohm acted through two entities he created and solely owned to represent his photographs, Chromosohm Media, Inc., and later Visions of America, Inc.  Statement of Facts, ¶¶ 2, 8; Sohm Decl., ¶¶ 2, 7.

his photographs to third parties in exchange for license fees.[5]  He subsequently executed a series of

renewal agreements with Corbis.[6]   In or around 1986, Sohm entered into a license agreement with

TIW authorizing it to issue limited license for use of his photographs to third parties in exchange for

license fees.[7]  On or around March 10, 1994, Sohm entered into an agreement with Photo

Researchers, authorizing it to issue limited license for use of his photographs to third parties in

exchange for license fees.[8]

C.      **Scholastic's ability to use Sohm's Photographs was limited in scope by the
        express terms of the licenses it obtained.**

Between 1999 and 2009, Corbis, TIW and Photo Researchers sold Scholastic limited licenses

to use copies of the Photographs in numerous educational publications.[9]  The licenses Corbis, TIW

and Photo Researchers granted Scholastic were expressly limited by number of copies permitted.[10]

Neither Sohm nor the Licensors authorized Scholastic to use Sohm's photographs beyond the

explicit limits granted in each license.[11]

Scholastic knew that the licenses it obtained for use of content owned by third parties were

limited, and that if it wanted to make additional uses beyond the scope of any license, Scholastic

needed to ask for permission and pay for such uses before it made them.[12]  But Scholastic never

asked Sohm or the Licensors for additional rights in the Photographs.[13]  And Scholastic has not, to

---

[5] Statement of Facts, ¶ 9; Sohm Decl., ¶¶ 24-26 and Exhibits 4-5 thereto.
[6] *Id.*
[7] Statement of Facts, ¶ 8; Sohm Decl., ¶ 23.
[8]  Statement of Facts, ¶ 10; Sohm Decl. ¶ 27 and Exhibit 6 thereto.
[9]  Statement of Facts, ¶ 11-15; Kerr Decl., ¶¶ 18-24 and Exhibits 13-15 thereto.
[10]  *Id.*
[11] Statement of Facts, ¶ 18; Sohm Decl. ¶ 28; Kerr Decl. ¶¶ 27-30.
[12] Statement of Facts, ¶ 21; *See* Kerr Decl., ¶ 31, Exhibit 18 thereto (excerpt of deposition testimony from May 18, 2017 by Scholastic's F.R.C.P. Rule 30(b)(6) designee, Jessica Moon ("May Moon Dep.")) at 7:11-15; 12:2-10; 12:21-24; 13:3-14:11; 15:18-16:11; 17:8-15; *and see* Kerr Decl., ¶ 32, Exhibit 19 thereto (excerpt of deposition testimony from April 14, 2017 by Scholastic's F.R.C.P. Rule 30(b)(6) designee, Jessica Moon ("April Moon Dep.")) at 11:16-12:06; 70:2-7.
[13] Statement of Facts, ¶ 20; Sohm Decl., ¶¶ 30-31.

this day, paid for its use of the Photographs in excess of license limits.[14]

### D. Scholastic used the Photographs beyond the terms of the limited licenses.

The documents Scholastic produced in discovery show that, despite the limits set forth in the licenses, Scholastic used the Photographs beyond license limits in publications at issue.[15] Specifically, Scholastic reproduced more copies of the Photographs than were licensed, as described in the Claims Summary.[16]

## III. SUMMARY JUDGMENT LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 56(c), the Court may grant summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the . . . moving party is entitled to judgment as a matter of law."[17] A party is entitled to summary judgment if the admissible evidence shows that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.[18] Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact.[19] After the moving party meets his burden, it shifts to the party opposing summary judgment, which must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial."[20]

## IV. ARGUMENT

"To establish a claim of copyright infringement, a plaintiff must establish: (1) ownership of a valid copyright; and (2) unauthorized copying of original elements of the plaintiff's work."[21] "[I]f

---

[14] *Id.*
[15] Statement of Facts, ¶¶ 24-26; Kerr Decl. ¶¶ 2-16 and Exhibit 1 thereto ("Claims Summary").
[16] *Id.*
[17] *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 250 (1986).
[18] Fed. R. Civ. P. 56.
[19] *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).
[20] Fed. R. Civ. P. 56(e); *Anderson,* 477 U.S. at 248-49.
[21] *Kay Berry, Inc. v. Taylor Gifts, Inc.,* 421 F.3d 199, 203 (3d Cir. 2005). *See also Feist Publications, Inc., v. Rural Telephone Service Co., Inc.,* 499 U.S. 340, 361 (1991); *Beholder Productions, Inc. v. Catona,* 629 F.Supp.2d 490, 493 (E.D. Pa. 2009) (Brody, J.);

the licensee acts outside the scope of the license, the licensor may sue for copyright infringement."[23]

Because no genuine issue of material fact exists regarding the validity of Plaintiff's copyrights or

Scholastic's use of the Photographs beyond the terms of the limited licenses, Scholastic should be

found liable for copyright infringement.

### A. Sohm owns valid copyrights in the Photographs.

Sohm created the Photographs, and is therefore the legal and beneficial owner of the

copyrights.[24] Sohm's Declaration and certificates of copyright registration demonstrate that the

Photographs have all been registered with the Copyright Office.[25] Because there is no disputed issue

of material fact regarding Sohm's ownership of validly registered copyrights in the Photographs,

Sohm satisfies the first element of the two-part infringement test.

### B. Scholastic understood that it needed permission from copyright owners to use their work prior to doing so.

Scholastic, itself a creator of copyrighted works, was aware that it needed to secure

permission to use third-party content prior to including it in its publications. For example,

Scholastic employee Jessica Moon (testifying on behalf of Scholastic pursuant to Rule 30(b)(6) in a

parallel litigation) stated:

 A. Scholastic believes strongly in intellectual property and respecting the rights of

---

*see also* 17 U.S.C. § 106(1) (copyright owner has the exclusive right to copy and to authorize copying of the work); 17 U.S.C. § 501(a) ("anyone who violates any of the exclusive rights of the copyright owner as provided by sections 106 . . . is an infringer of the copyright . . .").

[23] *MDY Industries, LLC v. Blizzard Entertainment, Inc.*, 629 F.3d 928, 939 (9th Cir. 2010); *see also LGS Architects, Inc. v. Concordia Homes of Nevada*, 434 F.3d 1150, 1156 (9th Cir. 2006) ("when a license is limited in scope, exploitation of the copyrighted work outside the specified limits constitutes infringement") (internal quotation marks omitted).

[24] Statement of Facts, ¶¶ 1-4; Sohm Decl., ¶¶ 2-4; U.S.C. § 201(a) (author of a work is the initial owner of the copyright).

[25] *See Psihoyos v. Pearson Educ., Inc.*, 855 F. Supp. 2d 103, 116 (S.D.N.Y. 2012) (finding that Plaintiffs made a *prima facie* showing of ownership by submitting registration certificates for the at-issue images); 17 U.S.C. § 410(c) ("[i]n any judicial proceedings the certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate. The evidentiary weight to be accorded the certificate of a registration made thereafter shall be within the discretion of the court."). *See also Wood v. Houghton Mifflin Harcourt Publishing Company, et al.*, 589 F. Supp. 2d 1230, 1239 (D. Colo. 2008) (holding that photographer plaintiff "met his burden of establishing that he is the holder of the copyright" by presenting the copyright certificates for the photographs-in-suit); *Frerck v. Pearson Educ., Inc.*, 63 F. Supp. 3d 882, 890 (N.D. Ill. 2014) (Plaintiff presents proof that he created the photographs at issue and that he holds a copyright to each one.)

others.  We have an intellectual property compliance policy, and that – I might summarize to say it's in our daily application to license every image, license every font, license every video clip.  So that's sort of the guiding principle.  Our team, we're responsible, as a partner with the team creating the books and magazines, to make sure that everything does get licensed.

> Q.      And get licensed before uses are made?
>
> A.      Yes.[26]

Ms. Moon's testimony paraphrases Scholastic's Intellectual Property Compliance Policy, which states: "Intellectual property rights are among Scholastic's most valuable assets.  Scholastic also believes in respecting the intellectual property rights of others."[27]  Scholastic knew – as written policy – that unlicensed uses of others' intellectual property violated copyright law.  But as evidenced by Scholastic's numerous infringements in this case, Scholastic did not comply with its own policy or the law.

### C.    The Licensor's written invoices to Scholastic for use of the Photographs were limited in scope with respect to print quantities.

"[A] copyright licensee can make himself a 'stranger' to the licensor by using the copyrighted material in a manner that exceeds either the duration or the scope of the license."[29]  Scholastic's use beyond those limits constitutes copyright infringement.[30]  Construction of license

---

[26] Statement of Facts, ¶ 22; *see* Kerr Decl., ¶ 32, Exhibit 19 thereto, April Moon Dep. at 11:16-12:06.

[27] Kerr Decl., ¶ 33 and Exhibit 20 thereto.

[29] *Marshal v. New Kids On The Block P'ship*, 780 F. Supp. 1005, 1009 (S.D.N.Y. 1991); *see also* David Nimmer, 3 Nimmer on Copyright, § 1015[A] (2012).

[30] *See PaySys Int'l, Inc. v. Atos Se, Worldline SA, Atos IT Servs. Ltd.*, No. 14-CV-10105 (KBF), 2016 WL 7181950, at *7 (S.D.N.Y. Dec. 8, 2016) ("The Second Circuit has recognized that a licensor may recover against a licensee for copyright infringement where (1) the licensee's alleged infringement is outside the scope of the license) (citing *Graham v. James,* 144 F.3d 229, 236 (2d Cir. 1998); *MacLean Associates, Inc. v. Wm. M. Mercer-Meidinger-Hansen, Inc.,* 952 F.2d 769, 779 (3d Cir. 1991) ("Since a nonexclusive license does not transfer ownership of the copyright from the licensor to the licensee, the licensor can still bring suit for copyright infringement if the licensee's use goes beyond the scope of the nonexclusive license.") (citing *LGS Architects, Inc. v. Concordia Homes of Nevada*, 434 F.3d at 1156 ["A copyright holder may grant a limited license for use of copyrighted material, and if the scope of the license is exceeded, the owner of the copyright may sue for infringement."]); *Grant Heilman Photography, Inc. v. John Wiley & Sons, Inc.*, 864 F.Supp.2d 316, 325 (E.D. Pa. 2012) (Gardner, J.) ("When a licensee exceeds the scope of a license granted by the copyright holder, the licensee is liable for infringement."); David Nimmer, 3 Nimmer on Copyright § 10.15[A] (2012) ("[W]hen a license is limited in scope, exploitation of the copyrighted work outside the specified limits constitutes infringement.").

terms must be done with the purposes of federal copyright law in mind.[31]  Pursuant to federal

copyright policy, "copyright licenses are assumed to prohibit any use not authorized."[32]

The relevant principles of contract construction are well established.  The primary objective

"is to give effect to the intent of the [contracting] parties as revealed by the language they chose to

use."[33]  If the language of the contract is "unambiguous and conveys a definite meaning," then the

interpretation of the contract is a question of law for the court.[34]  Alternatively, "[w]here the

language used is susceptible to differing interpretations, each of which may be said to be as

reasonable as another," then the interpretation of the contract becomes a question of fact for the

jury and extrinsic evidence of the parties' intent properly is admissible.[35]

Here, the terms of the written licenses to Scholastic are unambiguous.  Each license

expressly limited the print quantities of the Photographs for particular publications.[36]  Scholastic's

payment of the license fees and its subsequent use of the Photographs demonstrate Scholastic's

acceptance of the license terms.  Scholastic's Rule 30(b)(6) witness confirmed that Scholastic

understood that the licenses Scholastic obtained were limited, and that if Scholastic wanted to make

uses beyond those limits, it would need to go back and seek an additional license.[37]

    **1.**    **The 2004 "Pricing Agreement" did not authorize Scholastic to use**
             **photographs beyond the scope of the invoices Corbis issued.**

Corbis and Scholastic entered into a "Preferred Pricing Agreement" dated October 1, 2004

---

[31] *S.O.S., Inc. v. Payday, Inc.*, 886 F.2d at 1088 (citing *Cohen v. Paramount Pictures Corp.*, 845 F.2d 851, 854 (9th Cir. 1988)).
[32] *Id.* at 1088.
[33] *Seiden Assocs., Inc. v. ANC Holdings, Inc.,* 959 F.2d 425, 428 (2d Cir.1992).
[34] *Sayers v. Rochester Tel. Corp. Supplemental Management Pension Plan,* 7 F.3d 1091, 1094 (2d Cir.1993); *see Seiden,* 959 F.2d at 428 (contract language "is not ambiguous when it has a definite and precise meaning ... concerning which there is no reasonable basis for a difference in opinion" (internal quotations omitted)); *Leutwyler v. Royal Hashemite Court of Jordan,* 184 F. Supp. 2d 303, 306 (S.D.N.Y. 2001) ("a court may interpret a contract as a matter of law, where the language of the document is unambiguous.").
[35] *Bourne v. Walt Disney Co.,* 68 F.3d 621, 628-29 (2d Cir. 1995).
[36] Statement of Facts, ¶¶ 12-15; Kerr Decl. ¶¶ 18-24 and Exhibits 13-15 thereto.
[37] Statement of Facts, ¶ 21; *see* Kerr Decl., ¶ 31, Exhibit 18 thereto, May Moon Dep. at 17:8-15.

Plaintiffs' Motion for Partial Summary Judgment        16-cv-7098 (JPO)

("2004 Agreement").[41]  This agreement established the price Corbis would charge Scholastic for invoices issued while it was in place.[42]  The 2004 Agreement was, by its express terms, not retroactive.[43]  And nowhere does it grant Scholastic the right to make copies in excess of the licensed print quantity.  The 2004 Agreement also expressly incorporated Corbis's Traditional Licensing Terms and Conditions, which included the following provisions:

> **Use of Images:** "Images" means all images and related informational materials in any medium furnished by Corbis hereunder, including related text, captions, or information.
>
> You agree to payment for the license of the Image according to the terms of the invoice and this Agreement. You are required to pay for all Images that you obtain, regardless of whether you use them, unless you comply with the return/credit provisions of this Agreement. **Except as specified in the Corbis invoice, Images obtained from Corbis are licensed on a non-transferable, one-time, non-exclusive basis, and are strictly limited to the use, medium, time period, print run, placement, size of Image, territory, and any other restrictions indicated in the invoice or contained on Corbis' online site, and are licensed for use within one year from the date of the invoice**, or sixty (60) days for internal evaluations ("comps").
>
> **Listed Restrictions:** *Images may contain listed restrictions, including without limitation restrictions as to time, manner, industry and territory of use, and pre-approval by a depicted person or their representative.* Your ability to access an Image does not in itself entitle you to use that Image.  Use of any Image contrary to a listed restriction is prohibited.  If you do not understand or are unsure as to any restriction, you must contact Corbis prior to download or use of any Image.
>
> **License granted by Corbis:**  Unless otherwise specified in a separate writing signed by Corbis, **your reproduction of Images is limited to (i) internal evaluation or comps, or (ii) the specific use described in your invoice, which together with these terms shall constitute the full license granted**. Additional restrictions indicated on Corbis' online site or in the invoice may contain limitations on your use, medium, time period, print run, placement, size of Image, territory, and any other restrictions. Any license granted by Corbis is conditioned upon (i) your meeting all conditions and restrictions imposed by Corbis, and (ii) Corbis' receipt of full payment by you for such use as invoiced by

---

[41]  Statement of Facts, ¶ 16; Kerr Decl. ¶ 25 and Exhibit 16 thereto.
[42]  *Id.*
[43]  *Id.*, at 1 ("[t]his agreement. . . sets forth the understanding between [Corbis and Scholastic] with respect to **future** licensing by Scholastic. . .") (emphasis added).

Corbis. Your failure to make full payment when due shall terminate any license granted to you and entitles Corbis to pursue all remedies available under copyright laws. **You may not otherwise make, use or distribute copies of any Images for any purpose except as authorized. Corbis reserves all rights to the Images, and you do not acquire any copyright, ownership or equivalent rights in or to any Image as a result of any license Corbis grants to you...**

**Storage of Images**: . . . Following your licensed use, you agree to cease use of all images . . .

**Unauthorized Use**: Without limitation, Images may not be utilized as a trademark or service mark, or for any pornographic use, unlawful purpose or use, or to defame any person, or to violate any person's right of privacy or publicity, or to infringe upon any copyright, trade name, trademark, or service mark of any person or entity. **Unauthorized use of these Images constitutes copyright infringement** and shall entitle Corbis to exercise all rights and remedies under applicable copyright law, including an injunction preventing further use and monetary damages against all users and beneficiaries of the use of such Images. Corbis in its sole discretion reserves the right to bill you (and you hereby agree to pay) ten (10) times the normal license fee for any unauthorized use, in addition to any other fees, damages, or penalties Corbis may be entitled to under this Agreement or applicable law. **The foregoing is not a limiting statement of Corbis' rights or remedies in connection with any unauthorized use**.[44]

With the above language, Corbis makes it clear that access to photographs does not constitute authorization to use them, that uses permitted are expressly limited to those stated on each Invoice, and that unauthorized use is copyright infringement.

> **2. The 2008 "Pricing Agreement" did not authorize Scholastic to use photographs beyond the scope of the invoices Corbis issued.**

Scholastic entered a further agreement with Corbis entitled "Preferred Pricing Agreement" dated September 24, 2008 ("2008 Agreement"), which purports to "supersede[] any and all prior agreements and discussions between Corbis and Scholastic as to pricing."[45] The document itself does not convey any right to use images. Rather, like the 2004 Agreement, the 2008 Agreement establishes the prices Corbis would charge for future licenses requested by Scholastic.

---

[44] *Id.*, at 8-9 (emphasis added).
[45] Statement of Facts, ¶ 17; Kerr Decl. ¶ 26 and Exhibit 17 thereto.

The 2008 Agreement also incorporated by reference the Corbis Content License Agreement ("CCLA"), and expressly stated that, in the event of a conflict between the CCLA and the 2008 Agreement, "the unique terms of the CCLA will govern."[46]  The CCLA is similar to the Corbis Terms and Conditions in the 2004 Agreement, and provided:

**3. License Grant:**

(a) <u>Generally</u>: Any and all licenses granted by Corbis are conditioned upon (i) Your compliance with all provisions of this Agreement, and (ii) Corbis' receipt of full payment by You as identified in the applicable Invoice. Any and all license(s) granted to You hereunder and Your right to use the Content shall immediately terminate upon Your failure to comply with any material provision of this Agreement or to make full payment when due, in which case Corbis shall be entitled to pursue all other remedies available under copyright and other laws.

(b) <u>Rights Managed Content</u>: Subject to the terms and conditions of this Agreement, and excluding the rights granted in Section 3(c) and 3(d) below, Corbis grants You a limited, non-exclusive right to use the Rights Managed Content licensed hereunder to create and exploit the End Use solely as specified in the Invoice, and expressly as limited in the Specific Content Web Pages and the terms and conditions herein. Corbis reserves all rights not specifically granted in this Agreement.  Unless otherwise stated in the Invoice, the license granted hereunder for the applicable Rights Managed Content allows You to use the Rights Managed Content obtained hereunder for one year from the date the applicable Invoice is issued.  Except where specifically permitted on the Invoice for the applicable Content, You may not distribute, publish, display or otherwise use in any way, the Rights Managed Content, including without limitation the End Use after the Term.

**4. Ownership and Intellectual Property:**

Corbis and its Content sources retain all right, title, and interest in and to all of the copyrights, patent rights, trademarks, trade secrets, and all other proprietary rights in the Content. No rights in any Content are granted except the limited licenses specified in this Agreement. . .

**11. Unauthorized Uses:**

…Unauthorized use of Content constitutes infringement of copyright and other applicable rights and shall entitle Corbis to exercise all rights and remedies under applicable copyright and other laws, including monetary damages against all users

---

[46] *Id.*, at 5.

and beneficiaries of the use of such Content. . . .[47]

### D. Scholastic used the Photographs beyond the terms of the licenses it obtained.

The law is settled that use beyond the license limits is copyright infringement.[48]  Courts around the country have found that textbook publishers' use of stock photography beyond written invoice terms constitutes copyright infringement.[49]  In fact, across the numerous infringement actions filed around the country involving the use of stock photography by textbook publishers beyond invoice terms, not one court, jury, or arbitrator has yet found that such use did not constitute copyright infringement.

"[I]n most [copyright infringement] cases, direct evidence of copying is not available . . ."[50] Here, however, there is no confusion about which Photographs Scholastic used, or the extent of its use.  Scholastics's own documents conclusively establish that it printed more copies than were authorized.  Here, the facts are clear regarding the second prong of the two-part copyright infringement test and warrant summary judgment on Scholastic's unauthorized uses of Photographs

---

[47] *Id.*, at 7-9.

[48] *John Wiley & Sons, Inc. v. DRK Photo,* 998 F. Supp. 2d 262, 287 (S.D.N.Y. 2014), quoting *Harrell v. Van der Plas,* No. 08 Civ. 8252 (GEL), 2009 WL 3756327, at *2 (S.D.N.Y. Nov. 9, 2009).  *See also MacLean Associates, Inc. v. Wm. M. Mercer-Meidinger-Hansen, Inc.,* 952 F.2d at 779; *Grant Heilman Photography, Inc. v. John Wiley & Sons, Inc.,* 864 F.Supp.2d at 325; *Greenfield v. Twin Vision Graphics, Inc.,* 268 F.Supp.2d at 372; *MDY Industries, LLC v. Blizzard Entertainment, Inc.,* 629 F.3d at 939; *LGS Architects, Inc. v. Concordia Homes of Nevada,* 434 F.3d at 1156; *In re Microsoft Corp. Antitrust Litig.,* 333 F.3d 517, 534-535 (4th Cir. 2003); *S.O.S., Inc. v. Payday, Inc.,* 886 F.2d at 1087; *Kamakazi Music Corp. v. Robbins Music Corp.,* 684 F.2d 228 (2d Cir. 1982).

[49] *See, e.g. Psihoyos v. John Wiley & Sons, Inc* No. 11 Civ. 1416(JPO), 2012 WL 5506121 (S.D.N.Y. Nov. 7, 2012), *aff'd* --- F.3d ----, 2014 WL 1327937 (2d Cir. April 4, 2014) (after a six-day trial a jury in the Southern District of New York returned a verdict of $100,000 in statutory damages against Wiley for willfully infringing one photograph by Louis Psihoyos which Wiley had licensed for $216.  The Second Circuit Court of Appeals subsequently affirmed the jury's verdict.); *Panoramic v. John Wiley & Sons, Inc.,* No. 12-cv-10003, Doc. 206 at 6 (N.D. Ill. 2014) (jury found textbook publisher liable for willful copyright infringement for use of photographs in its publications beyond license limits, awarding $150,000 in statutory damages for one photograph, $62,500 for each of four other photographs, and $3,500 in actual damages and profits for one image not eligible for statutory damages); *Wood v. Houghton Mifflin Harcourt Publishing Co.* 589 F.Supp.2d 1230, 1241-42 (granting partial summary judgment in favor of plaintiff, finding liability for copyright infringement for use of photographs beyond license limits) ; *Bean et al. v. Pearson Education, Inc.,* 949 F.Supp.2d 941, 947 (D. Ariz. 2013) (same*); Panoramic Stock Images, Ltd v. McGraw-Hill Glob. Educ. Holdings, LLC,* No. 12 C 9881, 2014 WL 6685454, at *9 (N.D. Ill. Nov. 25, 2014), *opinion clarified,* No. 12 C 9881, 2015 WL 393381 (N.D. Ill. Jan. 27, 2015) (same); *Frerck v. John Wiley & Sons, Inc.,* No. 11-CV-2727, 2014 WL 3512991, at *11 (N.D. Ill. July 14, 2014) (same); *Frerck v. Pearson Educ., Inc.,* 63 F. Supp. 3d 882, 893 (N.D. Ill. 2014) (same).

[50] *Shaw v. Lindheim,* 919 F.2d 1353, 1356 (9th Cir. 1990).

identified in Claims Summary.

## V.    CONCLUSION

The undisputed facts show that Sohm is the legal copyright owner of the Photographs at issue and that Scholastic used the Photographs beyond the scope of the limited licenses it requested and paid for.  This unlicensed use constitutes copyright infringement.  Sohm respectfully requests the Court enter judgment of liability for copyright infringement against Scholastic on Count I of the Complaint as to the specific claims outlined in the Claims Summary.

DATED:  June 30, 2017

Plaintiffs Joseph Sohm and Visions of America, LLC, by their attorneys,

/s/ *Christopher Seidman*
Christopher Seidman (SBN 98884)
Harmon Seidman Bruss & Kerr, LLC
101 South Third Street, Suite 265
Grand Junction, Colorado 81501
(970) 245-9075
chris@harmonseidman.com

Maurice Harmon (admitted *pro hac vice)*
Harmon Seidman Bruss & Kerr, LLC
11 Chestnut Street
New Hope, PA 18938
215-693-1953
maurice@harmonseidman.com

Alex Rice Kerr
Harmon Seidman Bruss & Kerr, LLC
PO Box 3097
Jackson, WY
(970) 270-4718
alex@harmonseidman.com