UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOSEPH SOHM and VISIONS OF AMERICA, LLC,<br><br>                              Plaintiffs,<br><br>                    -v-<br><br>SCHOLASTIC INC.,<br>                              Defendant. | 16-CV-7098 (JPO)<br><br>OPINION AND ORDER |

J. PAUL OETKEN, District Judge:

Plaintiffs Joseph Sohm and Visions of America, LLC bring this action for copyright infringement against Scholastic Inc., pursuant to the Copyright Act, 17 U.S.C. §§ 101 *et seq.* Both parties have filed motions for partial summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons that follow, both motions are granted in part.

I.      **Background**

The following facts are taken from the parties' statements of undisputed facts and are not subject to a genuine dispute unless otherwise noted.

Plaintiff Joseph Sohm is a professional photographer. (Dkt. No. 80 ("Defs. CSOF") at 1, ¶ 1.) Sohm is the sole owner and president of Plaintiff Visions of America LLC, a stock photography business that licenses Sohm's photographs. (Defs. CSOF at 2, ¶ 2.) Sohm is the author of the 89 photographs at issue in this suit. (Defs. CSOF at 2, ¶ 3; Dkt. No. 88 ("Pls. CSOF") ¶ 7; Dkt. No. 38-1 to 38-5.) Defendant Scholastic is a publisher and distributor of children's books. (Pls. CSOF ¶ 3.)

Around 1986, Sohm entered into an agreement with The Image Works, Inc. to issue limited licenses to third parties on Sohm's behalf. (Defs. CSOF at 4, ¶ 8.) In 1994, Sohm entered into similar agreements with Continuum Productions Corporation, a predecessor-in-

interest of Corbis Corporation, and Photo Researchers, Inc. (Defs. CSOF at 4, ¶¶ 9–10.) These representation agreements remained in effect during the time period relevant to this case. (*Id.* at 4, ¶¶ 8–10.) These three agencies issued limited licenses to Scholastic to use Sohm's photographs. (Defs. CSOF at 4, ¶ 11.) And pursuant to those licenses, the agencies sent monthly royalty statements and payments to Plaintiffs. (Pls. CSOF ¶ 17.)

In the 1990s, Corbis registered a number of Sohm's photographs with the Copyright Office, pursuant to the agency's "copyright registration program." (Pls. CSOF ¶¶ 33–34.) Under this program, Sohm assigned his copyrights to Corbis for registration purposes, with the intention that Corbis would reassign the copyrights back to him after registration was completed. (Pls. CSOF ¶ 35.)

In 2004, Corbis entered into a "preferred vendor agreement" with Scholastic, which set certain fee amounts for certain print-run ranges of his photographs. (Pls. CSOF ¶¶ 41–42.) According to Scholastic, "Corbis did not treat [Scholastic's] ongoing, high-volume . . . use of a licensed photo . . . in excess of or beyond the print run estimate on the face of the invoice in question to be . . . copyright infringement, but viewed it as a contractual matter." (Pls. CSOF ¶ 46.) According to Sohm, "Scholastic knew that the licenses it entered into for uses of content owned by third parties were limited, and that if Scholastic wanted to make additional uses beyond the [print run] of any license, Scholastic needed to obtain permission and pay for such uses before it made them." (Defs. CSOF at 7, ¶ 21.) It is undisputed, however, that Scholastic printed certain photographs in quantities that exceeded the print run limits in its invoices, whether those invoices came from Corbis, Photo Researchers, or Image Works. (Defs. CSOF at 8, ¶¶ 25–26; Dkt. No. 69-1.)

In May 2016, Plaintiffs filed this suit, alleging that Scholastic infringed their copyrights by using their photographs in various publications in numbers that exceeded the relevant licenses.  (Dkt. No. 1; Dkt. No. 84 ¶ 1.)  In October 2016, Plaintiffs filed an amended complaint, which alleged 117 infringing uses of 89 different photographs.  (Dkt. No. 41.)  After the close of discovery, the parties each moved for partial summary judgment as to certain uses at issue.  (Dkt. No. 66; Dkt. No. 73.)

## II.    Legal Standard

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is material if it "might affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute is genuine if, considering the record as a whole, a rational jury could find in favor of the non-moving party.  *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009).

On summary judgment, the party bearing the burden of proof at trial must provide evidence on each element of its claim or defense.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  "If the party with the burden of proof makes the requisite initial showing, the burden shifts to the opposing party to identify specific facts demonstrating a genuine issue for trial, *i.e.*, that reasonable jurors could differ about the evidence."  *Clopay Plastic Prods. Co. v. Excelsior Packaging Grp., Inc.*, No. 12 Civ. 5262, 2014 WL 4652548, at *3 (S.D.N.Y. Sept. 18, 2014) (citing Fed. R. Civ. P. 56(c); *Anderson*, 477 U.S. at 250–51).  The court views all "evidence in the light most favorable to the non-moving party," and summary judgment may be granted only if "no reasonable trier of fact could find in favor of the nonmoving party."  *Allen v. Coughlin*, 64 F.3d 77, 79 (2d Cir. 1995) (second quoting *Lunds, Inc. v. Chem. Bank,* 870 F.2d 840, 844 (2d Cir. 1989)).

### III.    Discussion

To prevail on their copyright infringement claims, Plaintiffs "must show: (i) ownership of a valid copyright; and (ii) unauthorized copying of the copyrighted work." *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 51 (2d Cir. 2003).  "Even where these elements are satisfied, the existence of a license to engage in the challenged copying may be raised as a valid defense to an infringement claim." *Powlus v. Chelsey Direct, LLC*, No. 09 Civ. 10461, 2011 WL 135822, at *3 (S.D.N.Y. Jan. 10, 2011).  The existence of a license is treated as an affirmative defense, and therefore "the party claiming the benefit of the purported license has the burden to prove its existence." *Id.*  However, "[w]hen the contested issue is the scope of a license, rather than the existence of one, the copyright owner bears the burden of proving that the defendant's copying was unauthorized under the license." *Palmer/Kane LLC v. Rosen Book Works LLC*, 204 F. Supp. 3d 565, 569 (S.D.N.Y. 2016) (quoting *Graham v. James*, 144 F.3d 229, 236 (2d Cir. 1998)) (ellipses omitted).

Here, it is undisputed that Sohm owns the copyrights because he created the photographs. (Dkt. No. 91 at 4 n.2 ("Scholastic does not dispute that Sohm took the Photographs.  What Scholastic disputes is that the registrations covering these Photographs are valid."); Defs. CSOF at 2, ¶ 3 (disputing the validity of only the copyright registrations and not Sohm's ownership).)[1]

---

[1]    One can own a copyright without registering: "A copyright 'exists automatically upon the creation and fixation of an original work of authorship in a tangible medium of expression.' . . . A registration, in contrast, is granted by the Copyright Office, and the Copyright Act conditions certain statutory benefits—most notably, the right to sue for infringement—on registration." *Pastime LLC v. Schreiber*, No. 16 Civ. 8706, 2017 WL 6033434, at *3 (S.D.N.Y. Dec. 5, 2017) (quoting *Chere Amie, Inc. v. Windstar Apparel, Corp.*, 191 F.Supp.2d 343, 350 (S.D.N.Y. 2001)).

Scholastic does dispute whether Corbis actually reassigned certain copyrights back to Sohm after he had initially assigned those rights to Corbis for registration purposes.  (*See* Dkt.

Therefore, the gravamen of the dispute turns on whether Plaintiffs can establish the second element of infringement: unauthorized copying.

### A.    Scholastic's Motion for Partial Summary Judgment

Scholastic moves for summary judgment as to 113 of the 117 allegedly infringing uses identified in the amended complaint. (Dkt. No. 77 at 1.)

Scholastic seeks summary judgment on the grounds that: (1) Plaintiffs have failed to produce a valid copyright registration for certain photographs; (2) Scholastic did not actually exceed the relevant license for twelve of the uses at issue; and (3) Plaintiffs have failed to meet their burden of production to show that Scholastic exceeded its license for 42 uses at issue.

---

No. 77 at 12.) The Court concludes that Sohm has adduced sufficient evidence that Corbis in fact reassigned the relevant copyrights to him.

Courts have explained that, in order to constitute a valid assignment of rights under 17 U.S.C. § 204(a) of the Copyright Act, "a qualifying writing . . . need not contain an elaborate explanation nor any particular 'magic words,' but must simply 'show an agreement to transfer copyright.'" *Metro. Reg'l Info. Sys., Inc. v. Am. Home Realty Network, Inc.*, 722 F.3d 591, 600 (4th Cir. 2013) (first quoting *Radio Television Espanola S.A. v. New World Entm't, Ltd.,* 183 F.3d 922, 927 (9th Cir. 1999); second quoting *Lyrick Studios, Inc. v. Big Idea Prods., Inc.*, 420 F.3d 388, 391 (5th Cir. 2005)). Sohm's declaration explains that he participated in the Corbis copyright registration program (Dkt. No. 68 ¶ 6), and attaches copies of the "Copyright Registration Agreement" between Corbis and Sohm. That agreement provides that any transfer of copyrights was "solely for the purposes of copyright registration," and that Corbis would "promptly reassign legal title to [Sohm] . . . upon Corbis' receipt of a Certificate of Copyright Registration." (Dkt. No. 68-3 at 5.) Moreover, Sohm provides two letters from Corbis, which purport to reassign to him all legal title for images that have been registered. (Dkt. No. 68-3 at 6–7.) Notably, both of these letters are dated 2004, which is after the effective date of the only two relevant registrations. (*See* Dkt. No. 74-52, 74-54.) (As to other registrations, the Court grants Scholastic summary judgment for other reasons. (*See infra* Section III.B.)) At the very least, a factual dispute remains as to whether Sohm has introduced sufficient evidence of a valid reassignment of copyrights.

Scholastic's argument that Sohm created certain photographs as "works for hire for the benefit of Corbis" also fails. (Dkt. No. 77 at 8.) There is no evidence that Sohm created the relevant photographs as "works for hire." To the contrary, the relevant registrations state that *Corbis* created a "work for hire" (presumably, the compilation of works), while the individual authors created works that were *not* for hire. (*See* Dkt. Nos. 74-42, 74-45, 74-52, 74- 54; *see also* Dkt. No. 85 at 17.)

### 1. Validity of Copyright Registrations

Under 17 U.S.C. § 411(a), "[w]ith certain exceptions that are not relevant here, . . . a certificate of copyright registration is a prerequisite to bringing a civil copyright infringement action." *Palmer/Kane LLC v. Gareth Stevens Publ'g* ("*Palmer/Kane II*"), No. 15 Civ. 7404, 2017 WL 3973957, at *9 (S.D.N.Y. Sept. 7, 2017) (emphasis omitted). "The absence of a valid copyright registration . . . bar[s] a plaintiff from bringing a viable copyright infringement action." *L.A. Printex Indus., Inc. v. Le Chateau, Inc.*, No. 11 Civ. 4248, 2012 WL 987590, at *3 (S.D.N.Y. Mar. 23, 2012). Scholastic challenges Plaintiffs' standing to sue, arguing that certain registrations are invalid for three reasons: (i) failure to comply with 17 U.S.C. § 409(2)'s requirement to list the "the name . . . of the author or authors," (ii) inclusion of previously published works in an "unpublished" registration, and (iii) erroneously identifying the creation date of works registered in copyright registration VA 1-074-964. (Dkt. No. 77 at 6–11.)

### a. 17 U.S.C. § 409(2)

"[An] application for [a] copyright registration shall be made on a form prescribed by the Register of Copyrights and shall include . . . in the case of a work other than an anonymous or pseudonymous work, the name and nationality or domicile of the author or authors . . . ." 17 U.S.C. § 409. Based on this provision, Scholastic challenges the validity of certain "group" copyright registrations (collectively, "Corbis Group Registrations") completed by Plaintiffs' agent, Corbis.

The Corbis Group Registrations were created pursuant to Corbis' "Copyright Registration Program." Under that Program, Sohm assigned Corbis ownership of the copyrights to certain photographs "solely for the purposes of copyright registration," and authorized it to register these copyrights. (Dkt. No. 68-3 at 3; *see also* Dkt. No. 68 ¶ 6.) Corbis promised to "promptly enter into a reassignment of copyright to [Sohm]" after registration. (Dkt. No. 68-3 at 3.) It is

undisputed that throughout the late nineties and early aughts, Corbis registered several published group registrations in its own name.  (Pls. CSOF ¶¶ 128, 133, 137, 141, 146, 150, 154, 158, 162, 166, 170, 176, 181, 185.)  It is also undisputed that none of these group registrations identifies by name either Sohm or Visions of America LLC as an "author."  (Pls. CSOF ¶¶ 129, 134, 138, 142, 147, 151, 155, 159, 163, 167, 171, 177, 182, 187.)

The question is whether the Corbis Group Registrations are rendered "facially invalid" under 17 U.S.C. § 409(2) because they do not include Sohm as an "author."  (Dkt. No. 77 at 6.)  In other words, the Court must decide "whether the registration of an automated database—here, a compilation of photographs by different photographers—by a third-party copyright claimant that has been assigned the rights to the individual works for the purposes of copyright registration registers the individual works thereby permitting the individual photographers to sue for copyright infringement."  *Muench Photography, Inc. v. Houghton Mifflin Harcourt Pub. Co.*, 712 F. Supp. 2d 84, 92 (S.D.N.Y. 2010).

There is no binding Second Circuit authority on this question, and the courts that have addressed the question have arrived at conflicting conclusions.  On one hand, Defendant relies on *Muench*, in which Judge Preska concluded that it would contravene the "plain language of the Copyright Act" to allow group database registrations to constitute registration of the individual images contained therein.  *Id.*  On the other hand, Plaintiffs point to *Alaska Stock, LLC v. Houghton Mifflin Harcourt Publishing Co.*, in which the Ninth Circuit reached the exact opposite conclusion: If "the photographers have assigned their ownership of their copyrights in their images to the stock agency, and the stock agency registers the collection, both the collection as a whole and the individual images are registered."  747 F.3d 673, 682 (9th Cir. 2014).

The Court agrees with the reasoning of the Ninth Circuit and declines to follow *Muench*. When the relevant language in § 409(2) is read in *context*, the plain text does not require a database registrant like Corbis to list each individual author of each individual work in the database in order to effectively register those individual works. *See Yates v. United States*, 135 S. Ct. 1074, 1081–82 (2015) ("[T]he plainness or ambiguity of statutory language is determined [not only] by reference to the language itself, [but as well by] the specific context in which that language is used, and the broader context of the statute as a whole." (second and third alterations in original) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997))). As the Ninth Circuit has explained, the key word in § 409(2) is actually "work" rather than "author": "This subsection says that the name of the author or authors of 'the work' must be provided, the statute defines a 'collective work' as being a type of 'work,' and here, the author of the collective work" was Corbis. *Alaska Stock*, 747 F.3d at 681 (footnote omitted).[2] Therefore, the "'author or authors' that must be listed [under § 409(2)] are the author or authors of the collective work itself." *Id.* The Corbis Group Registrations all satisfied this requirement by listing Corbis as the author.

*Muench* rejected this reading of § 409(2) on the basis of 17 U.S.C. § 103, "which states that 'copyright in a compilation or derivative work extends *only to* the material contributed by the author.'" 712 F. Supp. 2d at 94 (quoting 17 U.S.C. § 103(b)). On closer examination, however, this section of the Act is of no help to Scholastic. Section 103 deals only with the "subject matter of copyright"; that provision makes no mention of registration, which is

---

[2] The Copyright Act defines a "collective work" as "a work, such as a periodical issue, anthology, or encyclopedia, in which a number of contributions, constituting separate and independent works in themselves, are assembled into a collective whole." 17 U.S.C § 101. As the court noted in *Muench*, the *Circular for Copyright Registration for Automated Databases* ("Circular 65") treats databases as a form of "compilation," a term which "includes collective works." 712 F. Supp. 2d at 93 n.7 (quoting 17. U.S.C. § 101).

conceptually distinct from copyright ownership and substance.  In other words, § 103 makes

clear that Corbis did not acquire "any exclusive right in the preexisting material," 17 U.S.C.

§ 103(b), by creating the compilation, but this provision is irrelevant to the validity of Corbis'

Group Registrations.[3]

Although the Court concludes that the plain text of § 409(2) validates Corbis' Group

Registrations, even if the text were ambiguous,[4] Plaintiffs would still prevail.  First, as *Muench*

and *Alaska Stock* both recognized, the Copyright Office's manuals and opinion letters are

entitled to *Skidmore* deference, "given the 'specialized experience and broader investigations and

information' available to the agency" (as long as those materials do not conflict with the express

statutory text).  *Muench*, 712 F. Supp. 2d at 91 (quoting *United States v. Mead Corp.*, 533 U.S.

218, 234 (2001)); *see also Alaska Stock*, 747 F.3d at 684–85 & n.52.[5]  Letters from the

Copyright Office have explained that the agency "preferred, but *did not require*, the registration

application [of a collective work] to contain the names of all of the photographers" in order to

---

[3]     Although Scholastic does not make this argument, the defendant in *Alaska Stock* did argue "that because the word 'work' is used to refer to an individual 'copyrighted work' elsewhere in the Copyright Act, it must have that meaning in section 409."  747 F.3d at 681. Nonetheless, for the reasons given by the Ninth Circuit, the Court rejects this argument and concludes that "work" refers to the "collective work" in this context.  *See id.* ("[Defendant's] interpretation of section 409 would render [§ 408(c)(2)(B)] superfluous [because it] requires single registrations of certain previously published works to identify each work and 'its date of first publication.'  This requirement is redundant if section 409(8), imposing an identical requirement, applies to constituent works as well as to collective works.").

[4]     *See, e.g.*, *Metro. Reg'l Info. Sys., Inc. v. Am. Home Realty Network, Inc.*, 722 F.3d 591, 597 (4th Cir. 2013) ("As applied to a collective work whose author has also acquired the copyrights in individual component works, the text of Section 409 is ambiguous at best.").

[5]     Under *Skidmore v. Swift & Co.*, courts defer to an agency's interpretation to the extent it has the "power to persuade."  323 U.S. 134, 140 (1944).

constitute valid registration of the individual works. *Muench*, 712 F. Supp. 2d at 88 (emphasis added); *see also Alaska Stock*, 747 F.3d at 677. In fact, the Chief of the Copyright Office's Examining Division confirmed the validity of Corbis' group registration procedure in a written response to an inquiry from counsel to a photographers' trade association. *Muench*, 712 F. Supp. 2d at 88.[6]

There are persuasive policy reasons supporting the Copyright Office's interpretation of the statutory requirement: "[T]he expensive and error-prone tedium of the Copyright Office typing all the names into its records may explain why the Register of Copyrights was satisfied to have the names of only three authors for so many years."[7] *Alaska Stock*, 747 F.3d at 681; *see also Metro. Reg'l Info. Sys.*, 722 F.3d at 599 ("[I]t would be . . . [absurd and] inefficient to require the registrant to list each author for an extremely large number of component works to which the registrant has acquired an exclusive license." (second and third alterations in original) (quoting *Craigslist Inc. v. 3Taps Inc.*, 942 F. Supp. 2d 962, 976 (N.D. Cal. 2013)). Finally, this practice of group registration has a longstanding pedigree: "[S]ince 1980, the Copyright Office has permitted, as a matter of practice, copyright registrations of collective works to cover underlying contributions where the rights in those contributions belong to the claimant even though the individual contributors are not named in the registration form." *Alaska Stock*, 747 F.3d at 679. In cases like this one, "[a] longstanding administrative interpretation upon which

---

This letter is also available at pages 12–13 of Docket Number 86.

[7] In letters and circulars, the Copyright Office has taken the position that "[t]he names of three authors followed by a statement 'and [number] others' suffices" to validly register a collective work. *See Alaska Stock*, 747 F.3d at 677 (second alteration in original).

private actors have relied aids in construction of a statute precisely because private parties have long relied upon it." *Id.* at 685.

Having determined that the Group Registrations were *valid*, despite their failure to list every individual author who contributed an individual work, the Court concludes that each Group Registration effectively registered each individual component work for purposes of § 411's standing requirement. Although the statute is silent on the question, this result follows from the regulations promulgated by the Register of Copyrights, which are entitled to *Chevron* deference.[8] *See Muench*, 712 F. Supp. 2d at 91 (explaining that the Register of Copyrights' "regulations detailing certain registration procedures" are "entitled to *Chevron* deference"). The relevant regulation provides that "[r]egistration of an unpublished 'collection' extends to each copyrightable element in the collection and to the authorship, if any, involved in selecting and assembling the collection." 37 C.F.R. § 202.3(b)(4). It is undisputed that, at the time of registration, Sohm had assigned Corbis his copyrights for purposes of registration: Therefore, at that point, "the copyright claimant in all of the elements, and in the collection as a whole, [was] the same." *Id.* § 202.3(b)(4)(i)(B)(3). Because of this assignment, when Corbis registered the collection, "both the collection as a whole *and the individual images* [were] registered." *Alaska Stock*, 747 F.3d at 682 (emphasis added); *see also Metro. Reg'l Info. Sys.*, 722 F.3d at 599–600 (holding that because "[Plaintiff] owned the copyright in each of the thousands of component photographs that had been transferred to [Plaintiff] prior to its automated database registrations," therefore it was "not barred from asserting infringement of its copyrighted photographs, which were registered as component works in its automated database registrations, in the present

---

[8]       Under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, "if the statute is silent or ambiguous with respect to the specific issue," courts will defer to an agency's interpretation as long as it is reasonable. 467 U.S. 837, 843 (1984).

action."); *Morris v. Bus. Concepts, Inc.*, 283 F.3d 502, 506 (2d Cir. 2002) ("[W]e hold that unless the copyright owner of a collective work also owns all the rights in a constituent part, a collective work registration will not extend to a constituent part.").[9]

Therefore, Corbis validly registered each of the photographs in the relevant group registrations.

### b.    Errors in "Unpublished Registrations"

Scholastic contends that four of Plaintiffs' copyright registrations are invalid because they contain "fundamental and material misstatements about their status as a group of unpublished works." (Dkt. No. 77 at 9–10.) "A group of unpublished works may be registered as a single work, upon payment of a single registration fee, but only if it consists of 'all copyrightable elements that are otherwise recognizable as self-contained works, and are combined in a single unpublished 'collection.'" *Family Dollar Stores, Inc. v. United Fabrics Int'l, Inc.*, 896 F. Supp. 2d 223, 229–30 (S.D.N.Y. 2012) (quoting 37 C.F.R. 202.3(b)(4)(i)(B)). "Registration of an unpublished collection extends to each copyrightable element in the collection and to the authorship, if any, involved in selecting and assembling the collection." *Id.* (quoting 37 C.F.R. 202.3(b)(4)(i)). For purposes of the Copyright Act, "'Publication' is the

---

[9]    *Muench* distinguished *Morris* on the basis that the latter case dealt with "serials," whereas the group registrations at issue in *Muench* were "automated databases," a different variety of "collective work" governed by different circulars and different regulatory subsections. *See* 712 F. Supp. 2d at 93–94. Nonetheless, in light of the Copyright Office's longstanding practice, the Court concludes that it is "more consistent with the statutory and regulatory scheme" to allow individual photographers like Sohm to use their agents' collective work registrations to satisfy § 411(a)'s standing requirement. *Metro. Reg'l Info. Sys.*, 722 F.3d at 598; *see also id.* at 598 n.10 ("The Copyright Office has consistently taken the position that the registration of a collective work also registers any independently copyrightable works within the collective work—referred to here as 'component works'—in which the claimant owns all rights, even if the registration application does not specify the titles and authors of the component works.").

distribution of copies . . . of a work to the public by sale or other transfer of ownership, or by rental, lease, or lending." 17 U.S.C. § 101.

With respect to at least some of the unpublished registrations in question,[10] it is undisputed that Sohm licensed certain photographs to Scholastic before registering them as "unpublished." (*See, e.g.*, Pls. CSOF ¶¶ 204, 221.) In other words, these photographs were published before they were registered as "unpublished." According to Scholastic, such errors invalidate the registration completely, thereby precluding Plaintiffs from bringing any infringement claims in connection with any photographs covered by those registrations. Plaintiffs respond that, under 17 U.S.C. § 411(b)(1),[11] any inaccuracies regarding publication do not affect the validity of the copyright registrations because the misstatements were inadvertent. Section 411(b) provides:

> (b)(1) A certificate of registration satisfies the requirements of this section and section 412, regardless of whether the certificate contains any inaccurate information, unless—
>
> > (A) the inaccurate information was included on the application for copyright registration with knowledge that it was inaccurate; and
> >
> > (B) the inaccuracy of the information, if known, would have caused the Register of Copyrights to refuse registration.

17 U.S.C. § 411(b). Under this provision, "before finding that knowingly inaccurate information would have caused the Register of Copyrights to refuse registration, a court must ask the Register whether that would have been the case." *Palmer/Kane II*, 2017 WL 3973957, at *10

---

[10]     Sohm also disputes whether twelve of the photographs in question were in fact previously published. (Dkt. No. 85 at 22.)

[11]     Congress amended the Copyright Act in 2008 to add a new Section 411(b). *See* Prioritizing Resources and Organization for Intellectual Property Act of 2008, Pub. L. No. 110-403, 122 Stat. 4256.

(S.D.N.Y. Sept. 7, 2017). "Although the statute by its terms requires a referral 'in any case in which inaccurate information described under [§ 411(b)(1)] is alleged,' courts generally agree that they may first require the party seeking invalidation to establish as a factual matter that the applicant included inaccurate information on the registration application with knowledge that it was inaccurate." *Id.* (alteration in original) (citation omitted) (quoting 17 U.S.C. § 411(b)(2)). Thus, the question here is whether Scholastic needs to establish that Sohm *knowingly* included inaccurate information about publication status on his registration application.

Scholastic relies primarily on *Family Dollar Stores, Inc. v. United Fabrics International, Inc.*, which held that "a published [work] included in an unpublished collection copyright registration application cannot be registered as part of the collection."[12] 896 F. Supp. 2d 223, 230 (S.D.N.Y. 2012). The *Family Dollar* court concluded that "the inclusion of 13 previously [published works] . . . in a collection of purportedly unpublished [works] is a *material* error [rather than] a *technical* error." *Id.* at 231. Therefore, the court refused to apply § 411(b)(1) because that provision "solely concerns technical and minor errors with copyright registrations." *Id.* at 233. The court reasoned that the registrant's error "would have clearly caused the Register of Copyrights to refuse to issue a registration for a collection of purportedly unpublished works that included . . . previously published designs . . . . Thus, this issue is more appropriately dealt with by ascertaining whether the registration should have issued in the first place, and that analysis does not require a showing of fraud." *Id.* at 233. Accordingly, under *Family Dollar*,

---

[12] Scholastic appears to argue that registration of previously published works in an unpublished group registration renders the *entire registration* invalid. (Dkt. No. 77 at 10–11.) This argument is contrary to *Family Dollar*: "[P]rior publication does not invalidate registration of the unpublished elements of the collection . . . , but it does invalidate the registration as to the previously published [work] . . . ." 896 F. Supp. 2d at 231.

Plaintiffs would be precluded from suing for infringement of the previously published photographs that Sohm registered as unpublished.

As Plaintiffs point out, however, subsequent cases in this circuit have rejected the *Family Dollar* approach on the ground that it contravenes the plain text of § 411(b)(1). *See Archie MD, Inc. v. Elsevier, Inc.*, 261 F. Supp. 3d 512, 518–20 (S.D.N.Y. 2017); *Palmer/Kane II*, 2017 WL 3973957, at *14. These two cases reasoned that the *Family Dollar* approach, which turns on a purported distinction between "material" and "technical" errors, is "inconsistent with the clear language of the statute." *Palmer/Kane II*, 2017 WL 3973957, at *14; *see also Archie MD*, 261 F. Supp. 3d at 518–20. The Court agrees with these two cases, and rejects *Family Dollar*:

> *Family Dollar*'s conclusion, that [§ 411(b)] did not apply because the error in question would have caused the Copyright Office to refuse registration, is hard to square with § 411(b)(1). *Family Dollar* finds that the condition in clause (B), *i.e.*, the materiality of the inaccuracy, is satisfied, but then takes that conclusion to entail that the condition in clause (A), *i.e.*, the knowledge of the inaccuracy, is irrelevant. But Section 411(b)(1) presents a conjunctive test: both conditions must be satisfied in order for an inaccuracy in a registration to defeat a claim.

*Palmer/Kane II*, 2017 WL 3973957, at *14 (quoting *Archie MD*, 2017 WL 3601180, at *6).

Here, Scholastic has failed to demonstrate the absence of a genuine factual dispute as to Sohm's knowledge of the inaccuracies in his application under § 411(b)(1)(A). To the contrary, Sohm averred that, when he submitted his application, he did not know whether the photographs had been previously published by his licensors or their licensees. (Dkt. No. 87 ¶ 3.) And unlike the claimant in *Family Dollar*, *see* 896 F. Supp. 2d at 225, Sohm "had not personally caused the submitted [works] to be published previously." (Dkt. No. 87 ¶ 2.) Because a genuine factual dispute remains as to Sohm's knowledge of the purported inaccuracies in his registration application, the Court cannot grant Scholastic summary judgment on this basis. *See*

*Palmer/Kane LLC v. Gareth Stevens Publ'g*, No. 15 Civ. 7404, 2016 WL 6238612, at *4 (S.D.N.Y. Oct. 24, 2016).

### c.     Errors Relating to Creation Dates on Registrations

Scholastic next contends that eight of the photographs registered under registration VA 1-074-964 were created in August 2000, but the first publication date on the registration is earlier (March 1, 2000).  According to Scholastic, because it is impossible for a photograph to be published before its creation date, registration of these photographs is "fatally flawed."  (Dkt. No. 77 at 10–11.)  Even if the Court were to agree with that legal proposition,[13] summary judgment is inappropriate because a genuine factual dispute exists as to the actual creation dates of the photographs.

Scholastic relies on a "Copyright Registration Report" written by Corbis, which lists the "created" and "published" dates for certain photographs.  (Dkt. No. 74 ¶ 6.)  Plaintiffs argue that the "Created Date" on this document does not correspond to the actual date that Sohm created the photographs, but instead signifies the date that the photographs were entered into Corbis' database.

Based on Sohm's deposition testimony, Plaintiffs have adduced sufficient evidence to raise a genuine factual dispute as to the creation date of the relevant photographs.  For example, with respect to the first 25 photographs listed on Corbis' Copyright Registration Report, Sohm testified that they "[obviously] weren't . . . all shot on June 14, 1994."[14]  (Dkt. No. 86 at 62.)

---

[13]     Notably, the parties do not address whether a genuine factual dispute exists as to Sohm's *knowledge* of any errors in his registrations relating to creation dates under § 411(b).

[14]     As Plaintiffs persuasively argue in their reply brief, "Corbis assigned the same [creation] date to hundreds of photographs, but Sohm did not create the photograph entitled 'Pro-Choice Rally at the Missouri State Capitol' the same date he created 'Pro-Choice Rally in New York City' and 'Los Angeles AIDS Rally.'"  (Dkt. No. 82 at 3.)

Sohm speculated that the "Created Date" may have been the date he submitted the photographs to Corbis, but more important, Sohm also affirmatively testified that "the Created Date" was "not a date that [he] provided" to Corbis. (Dkt. No. 86 at 63.) Because a genuine factual dispute exists as to whether an error exists in copyright registration VA 1-074-964, the Court cannot grant summary judgment to Scholastic on this basis.

### 2. Insufficient Evidence of Unauthorized Copying

"To satisfy the second element of an infringement claim—the 'unauthorized copying' element—a plaintiff must show both that his work was 'actually copied' and that the portion copied amounts to an 'improper or unlawful appropriation.'" *Jorgensen*, 351 F.3d at 51 (quoting *Castle Rock Entm't, Inc. v. Carol Pub. Grp., Inc.*, 150 F.3d 132, 137 (2d Cir. 1998)). Where, as here, "an author brings an infringement action against a purported licensee, . . . [and] [w]here the dispute is only over the scope of the license, . . . 'the copyright owner bears the burden of proving that the defendant's copying was unauthorized.'" *Tasini v. New York Times Co.*, 206 F.3d 161, 170–71 (2d Cir. 2000), *aff'd*, 533 U.S. 483 (2001) (quoting *Bourne v. Walt Disney Co.*, 68 F.3d 621, 631 (2d Cir. 1995)).

For twelve uses at issue involving ten photographs,[15] Scholastic contends that its use was within the scope of its licenses. The undisputed facts confirm that, for all the photographs in question, Scholastic did not exceed its print run under the relevant licenses. (Pls. CSOF ¶¶ 53–

---

[15] The relevant images are: "<Mayflower II> Replica at Sunset/JS004075"; "Tahquamenon Falls in Autumn/JS1262793/JS1262793"; "Kids at Puerto Rican Festival in Delaware/JS002547"; "Original United States Constitution/JS1000417"; "Front of a one dollar bill showing the portrait of George Washington in the center/ESOH46499"; "Illinois: Thatched hut, Indian Cahokia/ESOH0118870" (2 uses at issue); "Niagara Falls, New York: Aerial view of the Horseshoe Falls/ESOH0466200"; "Atlanta Georgia: State Capital/ESOH681400" (2 uses at issue); and "North Carolina: Brand new housing development near Charlotte/ESOH09906809."

Plaintiff also concedes that summary judgment is warranted as to the use of "Vietnam Vets Remember on Veterans Day/JS003709." (Dkt. No. 85 at 24 n.123.)

55, 61–62, 68–70, 76–78, 90–91, 97–99, 105–107, 113–115, 121–123.)  Faced with this

evidence, Plaintiffs respond that *Scholastic* cannot prove that it did not violate the licenses'

*geographic limitations*, even if it did not exceed its print runs for the photographs.  (*See* Dkt. No.

85 at 24.)  As explained above, however, *Plaintiffs*, not Defendant, bear the burden of proving

that Scholastic's copying of the photographs was unauthorized by the license.  Plaintiffs fail to

identify a single piece of evidence in the record to support their argument that Scholastic *might*

have exceeded the geographic limits on its licenses.  (*See id.*)  "Although all inferences must be

drawn in favor of the nonmoving party, mere speculation and conjecture is insufficient to

preclude the granting of the motion."  *Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 499

(2d Cir. 2001).

Because Plaintiffs "ha[ve] failed to make a sufficient showing on an essential element of

[their] case with respect to which [they] ha[ve] the burden of proof," *Celotex*, 477 U.S. at 323,

Scholastic is entitled to summary judgment as to these twelve uses at issue.

For another 43 uses at issue, Scholastic argues that Plaintiffs have failed to adduce

sufficient evidence from which a reasonable factfinder could conclude that Scholastic made an

unauthorized use of the relevant photographs.  First, as to seven uses, Scholastic contends that

Plaintiffs have not come forth with any evidence that a use occurred at all.  Plaintiffs fail to offer

any evidence or legal argument in response.  (*See* Dkt. No. 85 at 24–25; Dkt. No. 91 at 2 n.1.)

Because Plaintiffs have not met their burden to adduce evidence that a use was made, *see*

*Jorgensen*, 351 F.3d at 51, Scholastic is entitled to summary judgment as to these seven uses at

issue.[16]

---

[16]        These uses correspond to Rows 57, 59, 60, 64, 66, 67, and 71 of Docket Number
74-1.

Second, with respect to the remaining 36 uses at issue,[17] Scholastic contends that Plaintiffs have not satisfied their evidentiary burden to provide evidence that the uses were actually infringing. (*See* Dkt. No. 77 at 13–14.) Plaintiffs concede that they have not proffered sufficient evidence of infringement as to these claims. (Dkt. No. 85 at 24–25.) However, they claim that this lack of evidence results from Scholastic's failure to provide invoices and/or complete usage information during discovery. Therefore, they request permission to withdraw their claims *without prejudice* under Rule 41(a)(2). (Dkt. No. 85 at 25.)

To decide whether dismissal without prejudice is warranted, courts consider the following factors: "[1] plaintiff's diligence in bringing the motion; [2] any 'undue vexatiousness' on the plaintiff's part; [3] extent to which the suit has progressed, including the defendant's effort and expense in preparation for trial; [4] the duplicative expense of relitigation; and [5] the adequacy of plaintiff's explanation for the need to dismiss." *Galasso v. Eisman, Zucker, Klein & Ruttenberg*, 310 F. Supp. 2d 569, 572 (S.D.N.Y. 2004) (quoting *Zagano v. Fordham Univ.*, 900 F.2d 12, 14 (2d Cir. 1990)).

Considering these factors, the Court concludes that dismissal without prejudice is not appropriate. Factors one and two are neutral, but the rest of the factors weigh against Plaintiffs. Absent an explanation (beyond avoiding the preclusive effects of an adverse ruling on a dispositive motion) as to why dismissal without prejudice would be reasonable under the circumstances, courts in this circuit generally deny plaintiffs' requests to dismiss without

---

[17]   Scholastic's brief asserts that "Plaintiffs have failed to put forward sufficient . . . to demonstrate that an additional 35 Uses at Issue were actually infringing," and refers to Exhibit A to Docket Number 74 to identify these 35 uses. Exhibit A, however, identifies 36 uses to which this argument about insufficient evidence of infringement applies. (*See* Dkt. No. 74-1.) In response, Plaintiffs do not identify any specific evidence regarding infringement as to any of these 36 uses. Consequently, the Court assumes that the discrepancy is due to an error in counting, and that Scholastic intended its argument to cover the 36 uses identified in Exhibit A.

prejudice at the summary judgment stage. *Compare Galasso*, 310 F. Supp. 2d at 572 ("[A] party should not be permitted to avoid the prospect of an adverse decision on a dispositive motion by dismissing a claim without prejudice."), *with Omega Inst., Inc. v. Universal Sales Sys., Inc.*, No. 08 Civ. 6473, 2010 WL 475287, at *5 (W.D.N.Y. Feb. 5, 2010) (distinguishing *Galasso* and permitting dismissal without prejudice because, "[a]s a result of having to close its business, plaintiff did not and presently does not have the resources to continue litigating this matter"). These 36 claims are dismissed with prejudice.[18]

### B. Plaintiffs' Motion for Partial Summary Judgment

Plaintiffs move for partial summary judgment as to 13 uses at issue.[19] (Dkt. No. 66 at 1; Dkt. No. 69-1.) For these uses, Sohm authorized three stock photography licensing agencies, Corbis, The Image Works, and Photo Researchers, Inc., to sell Scholastic limited licenses to use his photographs in exchange for royalty fees. (Defs. CSOF at 4–5, ¶¶ 8–14.) Scholastic's uses of the relevant photographs exceeded the print run limits in its licenses. (Defs. CSOF at 10, ¶ 25.) Scholastic does not dispute that it exceeded the print runs in the relevant invoices and licenses, but instead offers several theories as to why it nonetheless cannot be held liable for copyright infringement.

First, Scholastic reiterates its three challenges to the validity of Sohm's registrations, which the Court addressed above. *See supra* Section III.A.1. These arguments are not sufficient to defeat summary judgment. Scholastic's challenge to the validity of the Corbis Group

---

[18] These claims correspond to Rows 1–3, 5, 6, 11–13, 16–18, 21–23, 25, 44, 51, 58, 61, 62, 63, 65, 72–84, and 105 of Docket Number 74–1.

[19] In their reply brief, Plaintiffs withdraw their motion for summary judgment with respect to the claims corresponding to rows 10 through 12 of Docket Number 69-1. (*See* Dkt. No. 82 at 3.)

Registrations fails as a matter of law.  *See supra* Section III.A.1.a.  Next, Scholastic's argument

that certain unpublished registrations are invalid due to fundamental errors applies only to claims

that either (a) Plaintiffs have withdrawn (*see* Dkt. No. 79 at 4–5; *supra* note 19), or (b) relate to

photographs that were not *themselves* previously published;[20] therefore, the Court need not

address whether a genuine factual dispute exists as to the validity of those registrations.

Scholastic also reasserts its argument disputing the accuracy of the creation dates on one

of Plaintiffs' copyright registrations.  (Dkt. No. 79 at 5–6.)  Although the Court previously

concluded that factual disputes relating to this argument precluded summary judgment in favor

of *Scholastic*, *see supra* Section III.A.1.c, Scholastic also opposes *Plaintiffs*' partial summary

judgment motion on this basis, with respect to five photographs: (1) "13-Star American

Flag/JS1000403," (2) "Presidential Seal of the United States/JS1000460," (3) U.S.

Capitol/JS1000437, (4) "the golden scales of justice/ESOH046493," and (5) "Preamble to the

U.S. Constitution/ESOH046518."  (Dkt. No. 79 at 5.)  As to the first three, the Court need not

address whether a genuine factual dispute exists regarding the creation date, because it grants

summary judgment to Scholastic on an alternative basis, as discussed below.  As to the fourth

and fifth photographs, Scholastic fails to introduce any evidence that the creation date for these

photographs was incorrect on the relevant registration.  (*See* Dkt. No. 84-5; 82 at 3 n.16.)  Thus,

it cannot defeat summary judgment on this basis.

Second, Scholastic contends that the claims at issue in Plaintiffs' motion are barred by

the statute of limitations.  "Civil actions for copyright infringement must be 'commenced within

three years after the claim accrued.'"  *Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 124

---

[20]    As explained above, registration of previously published works in an unpublished
group registration *does not* render the *entire registration* invalid, but affects the validity of the
registration of only the previously published works.  *See supra* note 12.

(2d Cir. 2014) (quoting 17 U.S.C. § 507(b)).  Copyright infringement claims do not accrue "until the copyright holder discovers, or with due diligence should have discovered, the infringement." *Id.*  Scholastic's statute of limitations argument "is an affirmative defense for which [it] bears the burden of proof."  *United States v. Livecchi*, 711 F.3d 345, 352 (2d Cir. 2013).

Here, Scholastic does not contend that Plaintiffs had actual notice of the relevant infringements, but rather that Plaintiffs, with due diligence, should have discovered the infringing acts more than three years before bringing their claims.  Scholastic has failed, however, to adduce sufficient evidence from which a reasonable factfinder could conclude that Plaintiffs' claims are untimely.  In order to raise a genuine factual dispute over the date on which the claims accrued, Scholastic must identify some affirmative evidence that would have been "sufficient to awaken inquiry and prompt an audit" on Plaintiffs' part.  *Bldg. Serv. 32BJ Health Fund v. Nutrition Mgmt. Servs. Co.*, No. 15 Civ. 3598, 2017 WL 946331, at *2 (S.D.N.Y. Feb. 10, 2017); *see also Merck & Co. v. Reynolds*, 559 U.S. 633, 653 (2010) ("In determining the time at which 'discovery' of those 'facts' occurred, terms such as 'inquiry notice' and 'storm warnings' may be useful to the extent that they identify a time when the facts would have prompted a reasonably diligent plaintiff to begin investigating.  But the limitations period does not begin to run until the plaintiff thereafter discovers or a reasonably diligent plaintiff would have discovered 'the facts constituting the violation' . . . irrespective of whether the actual plaintiff undertook a reasonably diligent investigation.").

Scholastic merely contends that Plaintiffs never conducted an audit or contacted Sohm's agents to inquire about payments, despite having the right to do so.  (Dkt. No. 79 at 7.)  Without identifying any information that would have *prompted* such an inquiry, however, Scholastic cannot simply rely on the passage of time to establish that Plaintiffs reasonably should have

discovered any infringement. Scholastic has failed to meet its evidentiary burden to survive summary judgment on this affirmative defense.[21]

Scholastic also argues that Sohm's damages should be limited to three years before he commenced this action. (Dkt. No. 79 at 9–10.) After the Court's decision in *Petrella*, courts in this circuit have reached conflicting conclusions as to whether damages are limited to three years before the commencement of the relevant litigation. *Compare Wu v. John Wiley & Sons, Inc.*, No. 14 Civ. 6746, 2015 WL 5254885, at *7 (S.D.N.Y. Sept. 10, 2015) ("Following *Petrella*, Wu can recover damages only for any Wiley infringing acts that occurred [not more than three years prior to filing the action]."), *and Fischer v. Forrest*, No. 14 Civ. 1304, 2017 WL 128705, at *7 (S.D.N.Y. Jan. 13, 2017), *report and recommendation adopted*, 2017 WL 1063464 (S.D.N.Y. Mar. 21, 2017), *with Energy Intelligence Grp., Inc. v. Scotia Capital (USA) Inc.*, No. 16 Civ. 0617, 2017 WL 432805, at *2 (S.D.N.Y. Jan. 30, 2017) ("[U]nder no reasonable reading of *Petrella* could the opinion be interpreted to establish a time limit on the recovery of damages separate and apart from the statute of limitations."). For the reasons given in *Energy Intelligence*

---

[21]    Because Plaintiffs filed their complaint without "information to substantiate [their] . . . claims," Scholastic claims that "Plaintiffs had all of the information needed to bring a claim many years ago, shortly after their photographs were licensed to Scholastic." (Dkt. No. 79 at 8.) Scholastic argues that, under the Supreme Court's decision in *Petrella v. Metro-Goldwyn-Mayer, Inc.*, Plaintiffs' claims are time-barred because "the limitations period generally begins to run at the point when 'the plaintiff can file suit and obtain relief.'" 134 S. Ct. 1962, 1969 (2014) (quoting *Bay Area Laundry & Dry Cleaning Pension Tr. Fund v. Ferbar Corp. of Cal.*, 522 U.S. 192, 201 (1997)).

The Court rejects this argument. *Petrella* explicitly distinguished this formulation of the limitations rule from the "discovery rule," which governs in this circuit, without overruling the Second Circuit's test. *See id*. at 1969 & n.4; *see also Energy Intelligence Grp., Inc. v. Scotia Capital (USA) Inc.*, No. 16 Civ. 617, 2017 WL 432805, at *2 (S.D.N.Y. Jan. 30, 2017) ("[T]he dicta from *Petrella* did not overrule *Psihoyos*."). Sohm's initial lack of information to substantiate his claims serves only to reinforce the fact that he had not yet discovered the relevant infringements. Without evidence that he should have discovered the infringements earlier in the exercise of due diligence, there is no genuine dispute of fact as to whether Plaintiffs' claims are timely.

*Group*, the Court concludes that *Petrella* did not overrule *Psihoyos*; therefore, the Court rejects Scholastic's argument that damages should be limited to three years before the filing of this case.

Third, and finally, Scholastic argues that none of its uses of photographs licensed by Corbis actually exceeded the scope of its licenses, even if its uses did exceed the print runs on Corbis' invoices.  (*See* Dkt. No. 79 at 11–14.)  It contends that, under its preferred vendor agreements with Corbis, the relevant print run limitations were contractual covenants, rather than conditions precedent; therefore, the claims for print overruns sound in breach of contract (which Plaintiffs did not plead) instead of copyright infringement.

As explained above, where, as here, "[a] copyright owner . . . grants a nonexclusive license to use his copyrighted material," the owner "waives his right to sue the licensee for copyright infringement."  *BroadVision, Inc. v. Med. Protective Co.*, No. 08 Civ. 1478, 2010 WL 5158129, at *3 (S.D.N.Y. Nov. 23, 2010) (quoting *Graham*, 144 F.3d at 236).  "However, if 'a license is limited in scope and the licensee acts outside the scope, the licensor can bring an action for copyright infringement.'"  *Id.* (quoting *Jacobsen v. Katzer*, 535 F.3d 1373, 1380 (Fed. Cir. 2008)).

"Whether a licensee has acted outside the scope of the license depends on whether the terms of the license were covenants or conditions."  *Id.*  "If [a] licensee's improper conduct constitutes a breach of a covenant undertaken by the licensee and if [that] covenant constitutes an enforceable contractual obligation, then the licensor will have a cause of action for breach of contract, not copyright infringement."  *Id.* (alterations in original) (quoting *Graham*, 144 F.3d at 237).  "In contrast, 'if the nature of the licensee's violation consists of a failure to satisfy a condition to the license . . . any use by the licensee is without authority from the licensor and may therefore[] constitute infringement of copyright.'"  *Id.* (alterations in original) (quoting

*Graham,* 144 F.3d at 237). "It is . . . for the court to decide, as a matter of law, whether a condition precedent to performance exists under the terms of a contract." *Powlus*, 2011 WL 135822, at *4.

"State law governs the interpretation" of a licensing contract, and here, "the Court will apply New York law, because the parties both assume that New York law governs the contract interpretation issues present in this case." *Tangorre v. Mako's, Inc.*, No. 01 Civ. 4430, 2003 WL 470577, at *6 (S.D.N.Y. Jan. 6, 2003). "New York respects a presumption that terms of a contract are covenants rather than conditions." *Graham*, 144 F.3d at 237. "While specific, talismanic words are not required, the law nevertheless demands that conditions precedent be 'expressed in unmistakable language.'" *Bank of New York Mellon Tr. Co. v. Morgan Stanley Mortg. Capital, Inc.*, 821 F.3d 297, 305 (2d Cir. 2016) (quoting *Oppenheimer & Co. v. Oppenheim, Appel, Dixon & Co.,* 86 N.Y.2d 685, 691 (1995)). "The New York Court of Appeals has defined a condition precedent as 'an act or event, other than a lapse of time, which, unless the condition is excused, must occur before a duty to perform a promise in the agreement arises.'" *Tangorre*, 2003 WL 470577, at *6 (quoting *Oppenheimer*, 86 N.Y.2d at 690). In contrast, "contract obligations that are to be performed after partial performance by the other party are not treated as conditions." *Graham*, 144 F.3d at 237.

In applying these New York contract law principles, courts have concluded that contract terms that "merely delineate 'acceptable' and 'unacceptable' behavior under the licensing agreement" are covenants. *Reis, Inc. v. Spring11 LLC*, No. 15 Civ. 2836, 2016 WL 5390896, at *7 (S.D.N.Y. Sept. 26, 2016); *see also Russian Entm't Wholesale, Inc. v. Close-Up Int'l, Inc.*, 767 F. Supp. 2d 392, 409 (E.D.N.Y. 2011), *aff'd*, 482 F. App'x 602 (2d Cir. 2012) ("The agreement explicitly stated that reproduction of non-complying disks is a 'violation' of the

agreement, rather than the failure to fulfill a condition precedent.").  On the other hand, with respect to payment of royalties or fees, courts have explained that "a provision delineating the consequences if the defendants failed to pay the full [r]ate or a notation that the license would expire or cease to exist if the defendants did not pay by a certain date" could constitute a condition precedent.  *Powlus*, 2011 WL 135822, at *5; *see also Irwin v. Am. Interactive Media, Inc.*, 93 Civ. 1403, 1994 WL 394979, at *4 (C.D. Cal. Apr. 14, 1994) (holding that full payment was not a condition precedent to an implied license, especially where the "[p]laintiff never told [the] [d]efendants that failure to pay would be viewed as copyright infringement").  For example, in *Tangorre*, the "contract clause at issue state[d] that [plaintiff] 'shall grant to [defendant]' the right to use the photographs '[u]pon receipt of payment in full'"; the court concluded that this clause constituted a condition precedent.  2003 WL 470577, at *7 (last alteration in original); *see also Jafari v. Wally Findlay Galleries,* No. 89 Civ. 2390, 1989 WL 116437, at *3 (S.D.N.Y. Sept. 26, 1989) (holding, under New York law, that a contract term providing that "[p]ainting to be shipped upon receipt of payment" should be interpreted as a condition precedent); *Preferred Mortg. Brokers, Inc. v. Byfield*, 723 N.Y.S.2d 230, 231 (N.Y. App. Div. 2d Dep't 2001) (holding that a clause requiring payment "directly upon [the] signed acceptance of a commitment" created a condition precedent) (alteration in original).

Here, the payment terms in Corbis' preferred vendor agreements with Scholastic do not contain sufficiently unmistakable language to give rise to a condition precedent.  The 2004 preferred vendor agreement sets out several payment schedules, under which Scholastic promises to pay certain fees for certain print-run ranges for different types of media.  (*See* Dkt. No. 74-7.) In an effort to locate unmistakable conditional language, Plaintiffs point to Attachment A to the 2004 Agreement, which provides:

> **License granted by Corbis:** Unless otherwise specific in a separate writing signed by Corbis, your reproduction of Images is limited to . . . the specific use descried in your invoice, which together with these terms shall constitute the full license granted. . . . Any license granted by Corbis is *conditioned upon* (i) your meeting all conditions and restrictions imposed by Corbis, and (ii) Corbis' receipt of [fu]ll payment by you for such use *as invoiced* by Corbis. Your failure to make full payment when due shall terminate any license granted to you and entitles Corbis to pursue all remedies available under copyright laws. You may not otherwise make, use or distribute copies of any Images for any purpose except as authorized.

(Dkt. No. 74-7 at 9 (emphasis added).)

The Court concludes that the print run limitations in this agreement are best characterized as covenants, rather than conditions. As Plaintiffs point out, Scholastic's license was conditional on full payment *as invoiced*. Plaintiffs do not allege, however, that Scholastic failed to pay as invoiced; instead, they allege that it paid the amount due under the invoices and then exceeded the *print run* in those invoices. Such action is better understood as a violation of the provision prohibiting Scholastic from "mak[ing], us[ing] or distribut[ing] copies of any Images for any purpose except as authorized." (*Id.*) Similarly, the language limiting Scholastic's "reproduction of Images . . . to . . . the specific use descried in your invoice" (*id.*) did not give rise to a condition: A contact term, like those in this agreement, which "merely delineate[s] 'acceptable' and 'unacceptable' behavior under the licensing agreement" is a covenant. *Reis*, 2016 WL 5390896, at *7; *see also Russian Entm't Wholesale*, 767 F. Supp. 2d at 409.[22]

---

[22] Scholastic also argues that the parties' course of conduct indicates that the print runs were not conditional. (*See* Dkt. No. 79 at 12–13.) Plaintiffs respond that "evidence of custom and course of dealing cannot displace rights conferred by the copyright laws." *Palmer/Kane LLC*, 204 F. Supp. 3d at 575. The Court need not address this argument from course of conduct, however, because it concludes that the contract language is a sufficiently clear indication of the parties' intent. *See, e.g., Szafran v. Sandata Techs., Inc.*, No. 03 Civ. 2606, 2010 WL 11530516, at *3 (E.D.N.Y. Feb. 3, 2010), *aff'd*, 452 F. App'x 41 (2d Cir. 2011)

In 2008, Corbis and Scholastic executed a new preferred vendor agreement, which "supersed[ed] any and all prior agreements." (Dkt. No. 74-8 at 1.) This agreement contains pricing schedules similar to those in the 2004 agreement. In an attempt to establish that the print runs were a condition precedent to this second agreement, Plaintiffs quote from a section titled "License Grant" which states:

> (b) <u>Rights Managed Content</u>: . . . Corbis grants You a limited, non-exclusive right to use the Rights Managed Content licensed hereunder to create and exploit the End Use *solely as specified in the Invoice* . . . . Except where specially permitted on the Invoice for the applicable Content, You may not distribute, publish, display or otherwise use in any way, the Rights Managed Content, including without limitation the End Use after the Term.

(Dkt. No. 74-8 at 11 (emphasis added).) This language falls even further short of creating a condition than that of the 2004 agreement. The 2008 agreement contains no unmistakable language conditioning the license on compliance with the print run limits in Corbis' invoices. And like the language in the 2004 agreement, the 2008 agreement is better understood as a prohibition on certain actions under the license, rather than as a condition. In other words, the print run limits are covenants under the 2008 agreement as well.

Because Scholastic breached a covenant, rather than a condition precedent, when it exceeded its print run limits under the Corbis licenses, all claims for infringement under Corbis licenses sound in contract rather than copyright. Consequently, the Court must grant summary judgment to Scholastic on those copyright claims.[23]

---

(rejecting plaintiff's interpretation based on the parties' course of conduct where the contract was "clear and unambiguous").

[23] The Court notes that Scholastic has not actually argued that it is entitled to summary judgment on this basis, but instead claimed that "issues of fact remain" as to whether Plaintiffs' claim "sounds in copyright or breach of contract, which Plaintiffs did not plead." (Dkt. No 79 at 14.) Nonetheless, the Court concludes that summary judgment for Scholastic is proper based on the Corbis preferred vendor agreements.

Having dealt with the uses at issue of photographs licensed under the Corbis preferred vendor agreements, the Court now turns to Plaintiffs' claims regarding photographs licensed by Photo Researchers and the Image Works.[24] Scholastic does not argue that the print run limits in its licenses from either Photo Researchers or Image Works were covenants, but instead limits this argument to its dealings with Corbis only. (*See* Dkt. No. 79 at 10–14.) In fact, Scholastic has not submitted any evidence of a preferred vendor agreement with Photo Researchers, and the Image Works licensing agreement it submitted was executed 2010, several years after the photographs relevant to this motion were licensed. (Dkt. No. 82 at 8 n.46; Dkt. No. 74-9; Dkt. No. 69-1.) Therefore, as to these claims, Scholastic has failed to raise a genuine dispute of fact as to whether it infringed Plaintiffs' copyrights.

The undisputed evidence demonstrates that Scholastic exceeded the scope of the print run limitations in its licenses with Photo Researchers and Image Works. (Defs. CSOF at 8, ¶ 25.) Because the undisputed facts demonstrate that Scholastic's use of the relevant photographs exceeded its licenses with Photo Researchers and Image Works, Plaintiffs are entitled to summary judgment on these claims. *See John Wiley & Sons, Inc. v. DRK Photo*, 998 F. Supp. 2d 262, 288 (S.D.N.Y. 2014), *aff'd*, 882 F.3d 394 (2d Cir. 2018) (granting summary judgment based

---

First, as previously explained, it is for the Court to decide, as a matter of law, whether a contractual provision is a covenant or condition precedent. *See Powlus*, 2011 WL 135822, at *4. Second, "as long as some party has made a motion for summary judgment, a court may grant summary judgment to a non-moving party, provided that party has had a full and fair opportunity to meet the proposition that there is no genuine issue of material fact to be tried." *First Fin. Ins. Co. v. Allstate Interior Demolition Corp.*, 193 F.3d 109, 115 (2d Cir. 1999). Here, Plaintiffs have been given an opportunity to respond to Defendant's arguments regarding whether the print runs were conditions precedent, and yet it remains clear that "no material dispute of fact exists and that [Defendant] is entitled to judgment as a matter of law." *Id.* (quoting *Ramsey v. Coughlin*, 94 F.3d 71, 74 (2d Cir. 1996)).

[24]     The relevant uses at issue correspond to rows 8–16 of Docket Number 69-1.

on defendant's use of photographs in excess of print run limits, where defendant failed to introduce evidence that its use was within the scope of an applicable license agreement).

## IV.   Conclusion

In sum, Scholastic is entitled to summary judgment on the claims corresponding to: (a) Rows 1 through 56 of Docket Number 74-1; and (b) Rows 57–67, 72–84, 97, 105, and 109–114 of Docket Number 74–1.  Plaintiffs are entitled to summary judgment on liability for copyright infringement as to the claims corresponding to rows 8, 9, and 13 through 16 of Docket Number 69-1.[25]  Summary judgment is denied as to all remaining claims.

Accordingly, Plaintiffs' partial motion for summary judgment is GRANTED in part and DENIED in part, and Defendant's motion for partial summary judgment is GRANTED in part and DENIED in part.

The Clerk of Court is directed to close the motions at Docket Numbers 66 and 73.

SO ORDERED.

Dated:  March 28, 2018
       New York, New York

_____
        J. PAUL OETKEN
     United States District Judge

---

[25]      All ranges are inclusive.